# Presidential Authority to Direct Departments and Agencies to Withhold Expenditures From Appropriations Made

Neither the Economy Act of 1933 nor any other statute authorizes the President to direct departments and agencies, either on a percentum basis or with reference to specific items, to withhold expenditures from appropriations made.

In the absence of legislative sanction, an executive order withholding expenditures from appropriations made would not be binding on the disbursing officers in the event that a department head or other authorized official should desire funds from the amount ordered to be withheld.

The President may request or direct the heads of the departments and agencies to attempt to effect such savings as may be possible without violation of a duty prescribed by law.

May 27, 1937

THE PRESIDENT

   THE WHITE HOUSE

My Dear Mr. President:

I have the honor of referring to your memorandum of May 17, 1937, in which you inquire as to the scope of your authority to direct departments and agencies, either on a percentum basis or with reference to specific items, "to withhold expenditures from appropriations made."

The statute to which you particularly refer is the Economy Act of March 3, 1933 (47 Stat. 1513). I do not find in that Act, or in any other, authorization for the President to direct the withholding of such expenditures.

To answer your inquiry, it is, therefore, necessary to consider the extent, under the Constitution, of the President's powers over the various departments and agencies of government and the officers thereof. The scope of such powers, while long the subject of discussion, has not yet been absolutely defined, and perhaps is susceptible of delimitation only as particular powers are drawn into question. However, it seems quite clear that the Constitution confers on the Congress the power to establish departments and agencies in the Executive Branch of the government and to define the duties and functions of the officers who are to administer them; and that, when the Congress has so done, the President, in the absence of legislative authority, has no legal power to interfere with the administration of such departments or agencies, further than to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

Several opinions of the Attorneys General have pointed out that, when a statutory duty devolves primarily upon an officer other than the President, the latter's sole obligation is to see that the officer performs such duty or to replace him. Thus, in *The President and Accounting Officers*, 1 Op. Att'y Gen. 624, 625–26 (1823), Attorney General Wirt said:

The constitution of the United States requires the President, in general terms, to take care that the laws be faithfully executed; that is, it places the officers engaged in the execution of the laws under his general superintendence: he is to see that they do their duty faithfully; and on their failure, to cause them to be displaced, prosecuted, or impeached, according to the nature of the case. . . . But it could never have been the intention of the constitution, in assigning this general power to the President to take care that the laws be executed, that he should in person execute the laws himself. For example: if a marshal should either refuse to serve process altogether, or serve it irregularly, that the President should correct the irregularity, or supply the omission, by executing the process in person. To interpret this clause of the constitution so as to throw upon the President the duty of a personal interference in every specific case of an alleged or defective execution of the laws, and to call upon him to perform such duties himself, would be not only to require him to perform an impossibility himself, but to take upon himself the responsibility of all the subordinate executive officers of the government—a construction too absurd to be seriously contended for. But the requisition of the constitution is, that he shall *take care* that the *laws* be executed. If the laws, then, require a particular officer by name to perform a duty, not only is that officer bound to perform it, but no other officer can perform it without a violation of the law; and were the President to perform it, he would not only be not taking care that the laws were faithfully executed, but he would be violating them himself. The constitution assigns to Congress the power of designating the duties of particular officers: the President is only required to take care that they execute them faithfully. . . . He is not to perform the duty, but to see that the officer assigned by law performs his duty *faithfully*—that is, *honestly*: not with perfect correctness of judgment, but *honestly*.

In *Power of the President Respecting Pension Cases*, 4 Op. Att'y Gen. 515, 516 (1846), Attorney General Mason, referring with approval to the opinion from which the above quotation is taken, said:

It is the constitutional duty of the President to take care that the laws be faithfully executed. But the constitution assigns to Congress the power of designating the duties of particular subordinate officers; and the President is to take care that they execute their duties faithfully and honestly. He has the power of removal, but not the power of correcting, by his own official act, the errors of judgment of incompetent or unfaithful subordinates.

The same conclusion is found in the words of Attorney General Miller, *Eight-Hour Law*, 19 Op. Att'y Gen. 685, 686–87 (1890):

> The President has, under the Constitution and laws, certain duties to perform, among these being to take care that the laws be faithfully executed; that is, that the other executive and administrative officers of the Government faithfully perform their duties; but the statutes regulate and prescribe these duties, and he has no more power to add to, or subtract from, the duties imposed upon subordinate executive and administrative officers by the law, than those officers have to add or subtract from his duties.

These views are confirmed by the opinion of the Circuit Court in *United States v. Kendall*, 26 F. Cas. 702, 752, 754 (C.C.D.C. 1837) (No. 15,517), wherein the court said:

> In the United States, by the constitution, all offices are to "be established by law." The president cannot appoint an officer to any office not established by law. The legislature may prescribe the duties of the office, at the time of its creation, or from time to time, as circumstances may require. If those duties are absolute and specific, and not, by law, made subject to the control or discretion of any superior officer, they must be performed, whether forbidden or not, by any other officer. If there be no other officer who is, by law, specifically authorized to direct how the duties are to be performed, the officer, whose duties are thus prescribed by law, is bound to execute them according to his own judgment. That judgment cannot lawfully be controlled by any other person. He is the officer, not of the president who appoints him, but the officer of the sovereign power of the nation. He is the officer of the United States, and so called in the constitution, and in all the acts of congress which relate to such officers. He is responsible to the United States, and not to the president, further than for his fidelity in the discharge of the duties of his office, unless the president is, by express law, authorized to assign him duties over and above those specially prescribed by the legislature. Such an officer is the postmaster-general. As the head of an executive department, he is bound, when required by the president, to give his opinion, in writing, upon any subject relating to the duties of his office. The president, in the execution of his duty, to see that the laws be faithfully executed, is bound to see that the postmaster-general discharges, "faithfully," the duties assigned to him by law; but this does not authorize the president to direct him how he shall discharge them. In that respect, the postmaster-general must judge

for himself, and upon his own responsibility, not to the president, but to the United States, whose officer he is. . . .

> . . . .

> The court, therefore, is confirmed in its opinion, . . . that the postmaster-general, in the faithful discharge of those duties which are prescribed by law, is not lawfully subject to the control of the president. The president's power of controlling an officer in the exercise of his official functions, is limited, we think, to those functions which are by law to be exercised according to the will of the president . . . .

In affirming the decision of the lower court, the Supreme Court said:

> The executive power is vested in a President; and as far as his powers are derived from the constitution, he is beyond the reach of any other department, except in the mode prescribed by the constitution through the impeaching power. But it by no means follows, that every officer in every branch of that department is under the exclusive direction of the President. Such a principle, we apprehend, is not, and certainly cannot be claimed by the President.

> There are certain political duties imposed upon many officers in the executive department, the discharge of which is under the direction of the President. But it would be an alarming doctrine, that congress cannot impose upon any executive officer any duty they may think proper, which is not repugnant to any rights secured and protected by the constitution; and in such cases, the duty and responsibility grow out of and are subject to the control of the law, and not to the direction of the President.

*Kendall v. United States*, 37 U.S. (12 Pet.) 524, 610 (1838).

As the Supreme Court said in *United States v. Midwest Oil Co.*, 236 U.S. 459, 505 (1915):

> The Constitution does not confer upon him [the President] any power to enact laws or to suspend or repeal such as the Congress enacts. *Kendall v. United States*, 12 Pet. 524, 613. The President's powers are defined by the Constitution of the United States, and the Government . . . freely concedes the general proposition as to the lack of authority in the President to deal with the laws otherwise than to see that they are faithfully executed.

It appears to follow from these authorities that in the absence of legislative sanction an order by you withholding expenditures from appropriations made would not be binding on the disbursing officers in the event that a department head or other authorized official should desire funds from the amount ordered to be withheld. Further doubt regarding the existence of the power to make such an order arises from the fact that the power would in effect enable the President to overcome the well-settled rule that he may not veto items in appropriation bills.

Opinions of the Attorney General indicate that presidential power over appropriations must find its source in legislation. While there has apparently been no ruling on the particular point here presented, various Attorneys General in a long line of opinions have uniformly decided questions of presidential power over appropriations by reference to legislation to ascertain whether the power sought has been conferred upon the President by Congress. *Authority of President to Reallot Unexpended Balances of Appropriations*, 32 Op. Att'y Gen. 359 (1920); *Samoan Islands—Appropriation*, 20 Op. Att'y Gen. 484 (1892); *Transfers of Surplus of Appropriations*, 5 Op. Att'y Gen. 273 (1850); *Transfers of Surplus of Appropriations*, 5 Op. Att'y Gen. 90 (1849); *Transfers of Appropriations for the Naval Service*, 4 Op. Att'y Gen. 310 (1844); *Transfers of Appropriations for the Navy Department*, 4 Op. Att'y Gen. 266 (1843); *Transfers of Specific Appropriations of House of Representatives to Contingent Fund*, 3 Op. Att'y Gen. 442 (1839).

The opinions just cited clearly indicate, however, and there would appear to be no doubt, that Congress can validly authorize you to direct withholding of expenditures. Even in the absence of legislative authority, it is, of course, entirely legal for you in an endeavor to accomplish the desired ends to request or direct the heads of the departments and agencies to attempt to effect such savings as may be possible without violation of or interference with the proper performance of any duty prescribed by law.

HOMER S. CUMMINGS
*Attorney General*
